**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**AT LEXINGTON**

| | |
|---|---|
| **METROPOLITAN DIRECT PROPERTY AND CASUALTY INSURANCE COMPANY,** | **CIVIL NO. 5:17-CV-40-KKC** |
| Plaintiff, | |
| V. | **OPINION AND ORDER** |
| **LARRY FARMER,** | |
| Defendant. | |

*** *** ***

This matter is before the Court on Metropolitan Direct Property and Casualty Insurance Company's ("Metropolitan") Motion for Summary Judgment. (DE 29.) For the reasons set forth below, Metropolitan's Motion for Summary Judgment (DE 29) is **DENIED**. Larry Farmer has also filed a Motion Under Fed. R. Civ. P. 56(d) for Additional Time to Take Discovery (DE 34). Based on the analysis below, that Motion (DE 34) is **DENIED AS MOOT**.

## I.  BACKGROUND

Larry Farmer claims that on October 1, 2015, he was hit by a car while walking near a Kroger in Lexington, Kentucky. (DE 33 at 2.) Farmer asserts he tried to avoid being run over by bracing himself against the front of the vehicle. (DE 29-2 at 9.) He landed on the hood and banged on it to get the driver's attention. (DE 29-1 at 2.) The driver stopped and spoke with Farmer following the incident. (DE 33 at 2.) However, Farmer did not exchange information with the driver, and the driver remains unidentified. (DE 33 at 3.) Farmer claims that he did not realize he was injured at the accident scene, but that he told co-workers about the accident and subsequent shoulder pain in the following days. (DE 33 at 2-3.)

Several weeks later, on November 16, 2015, Farmer went to his family physician for a three-month check-up. (DE 29-10 at 1.) During that visit, Farmer informed his doctor about the

accident and subsequent shoulder pain. (*See* DE 29-10 at 1.) Farmer was referred to a physical therapist for treatment. (DE 29-10 at 5.) Farmer failed physical therapy and had an MRI in March 2016, which revealed a massive tear in his rotator cuff. (DE 33 at 3.) In April 2016, Farmer was informed that he would need surgery to repair his rotator cuff, and in May 2016, Farmer underwent surgical repair. (DE 33 at 3.)

At the time of the alleged incident, Farmer was insured by Metropolitan under a policy that included uninsured motorist benefits and basic reparation benefits ("BRB"). (*See* DE 1 at 2.) Farmer never reported the accident to the police, and he did not report the incident to Metropolitan until almost seven months after the accident. (DE 33 at 4.)

When Farmer reported the incident to Metropolitan, he asserted a claim for uninsured motorist benefits, which was denied because the incident was neither reported to the police within twenty-four hours nor reported to Metropolitan within thirty days. (State Court Compl. DE 12-2 at ¶ 13.) Metropolitan relied on the notice provision pertaining to hit and run accidents in denying his request. (*See* 29-6 at 13.)

Metropolitan filed this action under Federal Rule of Civil Procedure 57 and 28 U.S.C. § 2201 seeking a declaratory judgement regarding its obligation to Farmer under his insurance policy. (DE 1 at 1.) Thereafter, Farmer filed an action in Fayette Circuit Court seeking a declaratory judgment that the subject-insurance contract was in full effect and available to pay any judgment rendered. (State Court Compl. DE 12-2 at ¶ 2.)

Metropolitan now moves for summary judgment asserting that Farmer is not eligible for coverage under the insurance policy because he failed to comply with the notice requirements of his insurance contract, and as a result, Metropolitan suffered substantial prejudice. (DE 29-1 at 3.) Farmer's policy provides multiple notice provisions potentially applicable to the present case. First, Farmer's policy provides that if an accident or loss occurs, "[y]ou or someone on your behalf must notify us as soon as possible of any accident or loss." (DE 29-6 at 23.) This

overarching-notice provision applies to all accidents and losses.  Second, the policy's coverage for hit and run accidents under the uninsured motorist benefits section requires that the accident be reported to a law enforcement within twenty-four (24) hours and Metropolitan within thirty (30) days of the accident.  (DE 29-6 at 13.)  Third, coverage under the BRB section requires that notice of claims must be given "as soon as practicable." (DE 29-6 at 34.)

Metropolitan asserts that Farmer failed to provide timely notice under all notice provisions in his insurance policy, and as a result, it has suffered substantial prejudice.  (DE 29-1 at 3.) Farmer asserts that (1) the notice provision applicable to hit and run accidents does not apply because the subject-accident was not a "hit and run;" (2) Metropolitan did not meet its burden in showing substantial prejudice; and (3) Metropolitan has failed to show the absence of a material fact concerning its alleged prejudice.  (DE 33.)  The Court considers the parties' arguments below.

## II. ANALYSIS

Summary judgment is appropriate where the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). The moving party bears the initial burden and must identify "those portions of the pleadings . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal citations omitted). Once the movant meets the initial burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).  "The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party."  *Combs v. Meijer, Inc.*, No. 5:12-CV-209-KSF, 2012 WL 3962383, at *2 (E.D. Ky. Sept. 10, 2012) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

It is undisputed that the subject-insurance policy is governed by Kentucky law. (*See* DE 29-1 at 4; DE 33 at 5.)  Under Kentucky law, "the construction and legal effect of an insurance contract is a matter of law for the court." *Bituminous Cas. Corp. v. Kenway Contracting, Inc.*, 240 S.W. 3d 633, 638 (Ky. 2007).

Farmer has made a claim for two types of benefits under different sections of his insurance policy: (1) Uninsured Motorist ("UM") benefits (*see* DE 29-6 at 12); and (2) Basic Reparation Benefits ("BRB") (*see* DE 29-6 at 30).  The Court construes the policy below and determines that parts of both sections are applicable.  The Court finds that Farmer has not complied with the required notice provisions in his insurance policy.  However, there is a genuine issue of material fact regarding whether Metropolitan was substantially prejudiced by the delay of notice.

**A. Uninsured Motorist Benefits.**

Farmer is eligible for UM benefits under the subject-insurance policy based on the "hit and run definition" of "uninsured motor vehicle."  Farmer's insurance policy provides:

We will pay damages for bodily injury sustained by:

1. you or a relative, caused by an accident arising out of the ownership, maintenance, or use of an uninsured motor vehicle, which you or a relative are legally entitled to collect from the owner or driver of an uninsured motor vehicle; or
2. any other person caused by an accident while occupying a covered automobile, who is legally entitled to collect from the owner or driver of an uninsured motor vehicle.

We will also pay damages to any person for damages that person is entitled to recover because of bodily injury sustained by anyone described in 1. or 2. above.

(DE 29-6 at 13-14.)

The policy further provides four possible definitions for "uninsured motor vehicle:"

1. a motor vehicle for which, at the time of the accident, there is no insurance policy or other financial security applicable to the owner, or operator, or any other liable person or organization.
2. a motor vehicle which has a bodily injury liability bond or insurance policy in effect at the time of the accident, but the amount of bodily injury coverage under such bond or insurance policy is less than the minimum financial security requirements of the state in which the covered automobile is principally garaged.

4

3. a motor vehicle which has a bodily injury liability bond or insurance policy in effect at the time of the accident, but the company writing such bond or policy denies coverage, or is or becomes insolvent.
4. a hit and run motor vehicle which causes bodily injury to a person covered under this section as the result of striking that person or a motor vehicle which that person is occupying at the time of the accident, if:
   a. the identity of the driver and the owner of the hit and run vehicle is unknown;
   b. the accident is reported within 24 hours to a police officer, a peace or judicial officer, or the Commissioner or Director of Motor Vehicles;
   c. the injured person or someone on their behalf files with us within 30 days of the accident a statement under oath that the injured person or their legal representative has a cause of action due to the accident for damages against someone whose identity is unknown; and
   d. the injured person or their legal representative makes available for inspection by us, when requested, the motor vehicle occupied by that person at the time of the accident.

(DE 29-6 at 12-13.)

Metropolitan asserts that only definition "4." (the "hit and run definition") of "uninsured motor vehicle" is applicable to the facts of this case. (DE 29-1 at 6.) Farmer asserts that the "hit and run" definition of uninsured motor vehicle is not applicable, and instead this case fits under definition "1." (DE 33 at 7.) The Court construes the policy below and finds that the at-fault driver who struck Farmer only fits under the "hit and run definition" of "uninsured motor vehicle."

## 1. The "hit and run definition" of "uninsured motor vehicle" applies to the facts of this case.

Under the "hit and run definition" the policy states that an uninsured motor vehicle includes "a hit and run vehicle that causes bodily injury…as the result of striking that person." (DE 29-6 at 13.) The policy then conditions that definition by stating that it only applies: (a) if the identity of the driver is unknown; (b) if the accident is reported to law enforcement within twenty-four (24) hours; (c) if the accident is reported to Metropolitan within thirty (30) days; (d) if the injured person makes available for inspection, the motor vehicle occupied by that person at the time of the accident. (DE 29-6 at 13.) Even though the policy provides certain conditions for coverage to apply, it does not otherwise define "hit and run."

i.    **The policy's use of the phrase "hit and run" is ambiguous, and consequently, the Court construes it in favor of coverage.**

When a term is not defined by the insurance policy, it is afforded its ordinary meaning, if that meaning is not ambiguous. *Cincinnati Ins. Co. v. Motorists Mut. Ins. Co.*, 306 S.W.3d 69, 73 (Ky. 2010), *as corrected* (July 19, 2011). When a term in an insurance policy is fairly susceptible to two different constructions, such that "reasonably intelligent men would honestly differ as to the meaning thereof," the term is ambiguous. *Gill v. Fid. Phenix Fire Ins. Co.*, 5 F. Supp. 1, 3 (E.D. Ky. 1933). An ambiguous term in an insurance policy shall be liberally construed in favor of coverage. *See Dowell v. Safe Auto Ins. Co.*, 208 S.W.3d 872, 878 (Ky. 2006); *Gager v. Cincinnati Ins. Co.*, No. 4:14-CV-00036-JHM, 2015 WL 1438259, at *3 (W.D. Ky. Mar. 27, 2015).

Farmer asserts that since the phrase "hit and run" is not ambiguous and not otherwise defined by the policy, it should be afforded its ordinary meaning. (DE 33 at 7.) Farmer contends that the common understanding of the phrase "hit and run" refers to a vehicle that has left the scene of the accident without stopping. (DE 33 at 7.) Farmer uses Merriam-Webster's Collegiate Dictionary (10th Ed.) to support his assertion, which defines "hit and run" as "being or involving a motor-vehicle driver who does not stop after being involved in an accident."

Metropolitan argues that the policy provides "clarification" of the meaning of "hit and run." Metropolitan asserts:

the policy clearly states that an uninsured motor vehicle includes a 'hit and run motor vehicle which causes bodily injury to a person covered…as a result of striking that person' if 'the identity of the driver and the owner of the hit and run vehicle is unknown' and other conditions are satisfied, including the reporting of the accident to police.

(DE 36 at 3.)

Metropolitan further argues that the policy does not require that a person "leave the scene without stopping." (DE 36 at 3.) Although Metropolitan's argument is that the policy does

sufficiently define "hit and run," Metropolitan and Farmer ultimately disagree over the meaning of the phrase "hit and run."

Courts across the United States also disagree on the meaning of the phrase "hit and run." Some courts have determined that the phrase "hit and run" encompasses an accident where the at-fault operator does not immediately flee the scene, but nevertheless leaves the accident without being identified. *See, e.g., Grimmett v. Farmers Ins. Exch.*, No. 321492, 2015 WL 5826821, at *1 (Mich. Ct. App. Oct. 6, 2015) ("[F]or purposes of the policy, a "hit-and-run" accident does not just encompass an accident where the other motorist immediately flees the scene—it also includes accidents where the other driver does not immediately flee the scene, but nonetheless fails to provide his contact and identification information to the policy holder or the authorities after the accident occurs."); *Wilson v. Progressive N. Ins. Co.*, 868 A.2d 268, 275 (N.H. 2005); *Zarder v. Humana Ins. Co.*, 782 N.W.2d 682, 692 (Wis. 2010). Some courts agree, but only where the injured individual does not know of any injury at the time of the accident. *See, e.g., Pilgrim Ins. Co. v. Molard*, 897 N.E.2d 1231, 1239 (Mass. App. Ct. 2008); *Riemenschneider v. Motor Vehicle Acc. Indemnification Corp.*, 232 N.E.2d 630, 632 (N.Y. 1967) ("An injured person who is not aware of his injury until it is too late to take steps to make the necessary identification is in precisely the same situation of deprivation of remedy as he would be if he knew he was hurt but the other driver left the scene without opportunity to identify him.") Some courts additionally consider whether the injured person made reasonable attempts to identify and locate the offender. *See Jones v. Unsatisfied Claim & Judgment Fund Bd.*, 273 A.2d 418, 421 (Md. 1971). Other courts require that the driver flee the scene post-accident for the accident to be considered a "hit and run." *See, e.g., Sylvestre v. United Servs. Auto. Ass'n Cas. Ins. Co.*, 678 A.2d 1005, 1008 (Conn. App. Ct. 1996), *aff'd*, 692 A.2d 1254 (Conn. 1997) ("Because the driver of the vehicle that struck the plaintiff stopped to render assistance and because the plaintiff affirmatively acted to dismiss the driver from the scene of the accident, we conclude that the

plaintiff was not struck by a hit and run vehicle."); *Kasid v. Country Mut. Ins. Co.*, 776 N.W.2d 181, 187 (Minn. Ct. App. 2009) ("[A]ppellant failed to show that he was involved in a hit-and-run accident because Doe did not flee the scene after the accident. Doe got out of her vehicle after she rear-ended the vehicle in which appellant was a passenger. She did not attempt to conceal her identity."); *State Farm Mut. Auto. Ins. Co. v. Seaman*, 980 P.2d 288, 290 (Wash. Ct. App. 1999) ("[T]he definition of hit-and-run does not include a situation where a driver stops, inquires, and is reassured that there is neither personal injury nor property damage.").

The jurisdictional split among courts confirms that the phrase "hit and run" is susceptible to two different, reasonable constructions. Given the foregoing and considering that the parties ultimately disagree on the meaning of that phrase "hit and run," the Court finds that "hit and run," as used in the Farmer's insurance policy, is ambiguous. Because "hit and run" is ambiguous, the Court construes it in favor of finding coverage for the insured. *See Dowell*, 208 S.W.3d at 878.; *Gager*, 2015 WL 1438259 at *3. Accordingly, the notice provision under the "hit and run definition" of "uninsured motor vehicle" is applicable to the present case.

> ii. **Farmer did not comply with the notice requirements for "hit and run" accidents.**

Farmer failed to comply with the notice provision provided under the "hit and run definition" of "uninsured motor vehicle." The policy provides that hit and run accidents must be "reported to a police officer, a peace or judicial officer, or the Commissioner or Director of Motor Vehicles" within twenty-four (24) hours of the accident and reported to Metropolitan within thirty (30) days of the accident. (DE 29-6 at 13.) It is undisputed that Farmer did neither.

Whether an insured party gave timely notice is typically a question of fact. *S. Fifth Towers, LLC v. Aspen Ins. UK, Ltd.*, 763 F. App'x 401, 408 (6th Cir. 2019). However, where the facts are undisputed and they unequivocally reveal that the insured did not comply with the notice requirements, the issue is appropriate for summary judgment. *See id.*

Farmer did not report the accident to law enforcement within twenty-four (24) hours. In fact, Farmer admitted that he never reported the accident to law enforcement. (DE 29-2 at 9.) Farmer also did not report the accident to Metropolitan within thirty (30) days. (*See* DE 29-2 at 12; DE 29-3.)

Metropolitan asserts that it was not notified of Farmer's claim until May 12, 2016, when it received a letter from Farmer's attorney, Frank Jenkins. (DE 29-1 at 2-3.) The letter from Jenkins was dated April 26, 2016. (DE 29-3 at 1.) Farmer testified that he did not notify Metropolitan of the accident at all in 2015. (DE 29-2 at 12.) He additionally stated that Jenkins was the first person to contact Metropolitan regarding a claim under his insurance policy around May 2016. (*See* DE 29-2 at 12.) Accordingly, Farmer did not notify Metropolitan of any claim under his insurance policy until approximately seven months after the accident.

The undisputed evidence clearly establishes that Farmer did not report the accident to police within twenty-four (24) hours or Metropolitan within thirty (30) days. The issue is, therefore, appropriate for summary judgement. *See S. Fifth Towers, LLC.*, 763 F. App'x at 408. Accordingly, the Court finds that Farmer failed to comply with his policy's notice provisions for hit and run accidents, as required for UM benefits.

### 2. The other definitions of "uninsured motor vehicle" listed in the policy do not apply to this case.

In addition to the "hit and run definition," the policy provides three other possible definitions of "uninsured motor vehicle:"

1. a motor vehicle for which, at the time of the accident, there is no insurance policy or other financial security applicable to the owner, or operator, or any other liable person or organization.
2. a motor vehicle which has a bodily injury liability bond or insurance policy in effect at the time of the accident, but the amount of bodily injury coverage under such bond or insurance policy is less than the minimum financial security requirements of the state in which the covered automobile is principally garaged.
3. a motor vehicle which has a bodily injury liability bond or insurance policy in effect at the time of the accident, but the company writing such bond or policy denies coverage, or is or becomes insolvent.

(DE 29-6 at 12-13.)

The parties agree that "uninsured motor vehicle" definitions "2." and "3." do not apply to the facts of this case. (*See* DE 29-1 at 6; DE 33 at 7.) However, Farmer asserts that the vehicle that hit him falls into definition "1." of uninsured motor vehicle. (DE 33 at 7.) The Court disagrees.

Definition "1." provides that an "uninsured motor vehicle" includes a "motor vehicle for which, at the time of the accident, there is no insurance policy or other financial security applicable to the owner, or operator, or any other liable person or organization." (DE 29-6 at 12.) Farmer, in asserting that definition "1." is applicable, relies on *Dowell v. Safe Auto Ins. Co.* (DE 33 at 7.)

In *Dowell*, the Kentucky Supreme Court considered a claim for coverage under an insurance policy's uninsured motorist benefits section. 208 S.W.3d at 873. The central issue was whether Safe Auto, the insurance provider, was required to provide uninsured motorist benefits to the insured, whose vehicle was hit by a driver who concealed his identity and fled the scene of the accident. *Id*. The plaintiff's policy provided uninsured motorist benefits but did not explicitly provide benefits for hit and run accidents. *Id*. at 875-76. Litigation ensued over whether hit and run accidents were covered by one of the policy's definitions for "uninsured motor vehicle." *Id*. at 874-75. Specifically, the parties disputed over whether the accident-causing-vehicle qualified as an "uninsured motor vehicle" for purposes of the policy. *Id*. at 876. The policy provided that "uninsured motor vehicle" included "a land or motor vehicle or trailer of any type…to which no bodily injury liability bond or policy applies at the time of the accident." *Id*.

In construing the insurance policy, the Kentucky Supreme Court first considered Kentucky's statutory requirements for uninsured motorist coverage under KRS § 304.20-020. *Id*. Under that statute, "uninsured motor vehicle" is not explicitly defined. *See* Ky. Rev. Stat. Ann. § 304.20-020. However, the statute articulates three instances where an insured motor vehicle is deemed uninsured for purposes of the statute:

10

(1) where the liability insurer thereof is unable to make payment with respect to the legal liability of its insured within the limits specified therein because of insolvency; (2) an insured motor vehicle with respect to which the amounts provided, under the bodily injury liability bond or insurance policy applicable at the time of the accident with respect to any person or organization legally responsible for the use of such motor vehicle, are less than the limits described in KRS 304.39-110; and (3) an insured motor vehicle to the extent that the amounts provided in the liability coverage applicable at the time of the accident is denied by the insurer writing the same.

Ky. Rev. Stat. Ann. § 304.20-020(2).

The Kentucky Supreme Court noted that KRS § 304.20-020 did not require insurance companies to provide coverage for hit and run vehicles. *Dowell*, 208 S.W.3d at 876. The Court also noted that insurance companies were at liberty to define "uninsured motor vehicle" in their policies so long as they provided the minimum coverage required by KRS § 304.20-020. *Id*.

The Kentucky Supreme Court then considered whether the accident-causing-vehicle was an "uninsured motor vehicle" for purposes of the policy. Safe Auto argued that when it defined "uninsured motor vehicle" in its policy, "it purposefully and unambiguously left out 'hit and run' vehicles." *Id*. The Court turned to the language used in the policy and considered it in light of the requirements under KRS § 304.20-020. The policy provided that an uninsured motor vehicle included motor vehicles "to which no bodily injury liability or policy applies at the time of the accident." *Id*. Safe Auto asserted that this defines the "most basic instance where UM coverage is afforded i.e., when the tortfeasor does not have liability insurance." *Id*. It further argued that the policy only extended uninsured motorist coverage to the extent mandated by KRS § 304.20-020. *Id*.

The Court rejected Safe Auto's argument on the basis that the policy included a definition for uninsured motor vehicle—a motor vehicle to which no bodily injury liability or policy applies at the time of the accident—that was not mandated by KRS § 304.20-020. *Id*. Thereafter, the Court analyzed the language of that definition to determine whether the accident-causing-vehicle was an "uninsured motor vehicle" under the insured's policy. *Id*.

The insured argued that since the word "applies" was not defined by the policy, it should be afforded its plain and ordinary meaning. *Id*. at 876-77. "Applies" was defined as "to make use of as suitable fitting or relevant … to put to use especially for some practical purpose … to bring into action." *Id*. at 877. The insured argued "that under the plain and ordinary meaning of 'applies,' no liability policy was 'put to use' or was brought 'into action,' nor could it have been, because the tortfeasor concealed himself and his motor vehicle." *Id*. The insured further asserted, "no liability insurance, if any there was, of the tortfeasor was 'relevant,' because no insurance policy 'related to the matter at hand.'" *Id*.

The Court concluded that the policy's use of "applies" was ambiguous because the ordinary "meaning of that word fail[ed] to satisfy the purpose for which Safe Auto [sought] to use it." *Id*. The Court stated "[p]ractically speaking, when an unidentified negligent motorist causes bodily injury and thereafter conceals himself, no liability insurance applies." *Id*. Because the term "applies" was ambiguous, the Court found that it should be given the meaning favoring coverage. *Id*. at 878. Since the hit and run driver could not be located, no insurance policy "applied" at the time of the accident. *Id*.

The facts of the present case differ from those in *Dowell*. Most significantly, the subject-policy here contains a "hit and run definition" of "uninsured motor vehicle." (DE 29-6 at 13.) Additionally, Metropolitan's position is different from the insurance provider in *Dowell*. In *Dowell* the insurance provider was attempting to deny uninsured motorist coverage altogether since the policy did not explicitly provide coverage for "hit and run" vehicles under the uninsured motorist section. *See Dowell*, 208 S.W.3d at 876. Here, Metropolitan is asserting that the policy actually does provide coverage for the subject-accident, but that coverage is precluded based on lack of compliance with relevant notice provisions, which prejudiced Metropolitan. (*See* DE 29-1.) Because *Dowell* was decided under an entirely different framework than presented by the facts of the present case, the Court finds that it is not applicable in this context. Consequently,

Farmer may only seek UM benefits based on the "hit and run definition" of "uninsured motor vehicle."

## B. Basic Reparation Benefits.

Farmer's policy also includes Basic Personal Injury Protection Coverage. Farmer has made a claim for BRB under this section. The policy provides:

> We will pay, in accordance with the Kentucky Motor Vehicle Reparations Act, personal injury protection benefits for:
>
> 1. medical expense;
> 2. work loss;
> 3. replacement services loss;
> 4. survivor's economic loss;
> 5. survivor's replacement services loss; and
> 6. funeral expense
>
> incurred with respect to bodily injury sustained by an eligible injured person and caused by an accident arising out of the operation, maintenance or use of a motor vehicle as a vehicle.

(DE 29-6 at 31.)

The policy defines "eligible injured person" as "a named insured … who sustains bodily injury while occupying or while a pedestrian through being struck by any motor vehicle." (DE 29-6 at 30.) Farmer is an "eligible injured person" because he was a named insured who sustained bodily injury while a pedestrian through being struck by a motor vehicle. (DE 1 at 2.)

### 1. Farmer did not comply with the notice requirements for BRB.

Farmer failed to comply with the notice requirements for BRB. Coverage under this section of the policy is subject to certain "conditions." (*See* DE 29-6 at 34.) Under Subsection B of the conditions, "Notice," the policy provides:

> [i]n the event of an accident, written notice containing particulars sufficient to identify the eligible injured person, and also reasonably obtain information respecting the time, place and circumstances of the accident shall be given by or on behalf of each eligible injured person to the company or any of its authorized agents as soon a [sic] practicable.

(DE 29-6 at 34.)

In addition, Subsection C, "Medical Reports; Proof of Claim," provides:

[a]s soon as practicable, the eligible injured person or someone on his behalf shall give to the company written proof of claim, under oath, if required, including full particulars of the nature and extent of the bodily injury, treatment and rehabilitation received and contemplated, and such other information as may assist the company in determining the amount due and payable.

(DE 29-6 at 34.)

Whether an insured party gave timely notice is typically a question of fact. *S. Fifth Towers, LLC*, 763 F. App'x at 408. However, where the facts are undisputed and they unequivocally reveal that the insured did not comply with the notice requirements, the issue is appropriate for summary judgment. *See id.* Under Kentucky law, a provision requiring that notice be given "as soon as practicable" requires that notice be given within a "reasonable time." *Travelers Ins. Co. v. Ohio Farmers Indem. Co.*, 157 F. Supp. 54, 60 (W.D. Ky. 1957), *aff'd*, 262 F.2d 132 (6th Cir. 1958). Whether the notice was given within a reasonable time depends on the facts and circumstances of each case. *Id.*

Here, the facts are undisputed, and they unequivocally reveal that Farmer did not comply with the notice requirements for BRB. Accordingly, the issue is appropriate for summary judgment.

Farmer's attorney, Jenkins, first notified Metropolitan of a claim under his insurance policy by way of letter dated April 26, 2016—nearly seven months after the subject accident. (DE 29-2 at 12; DE 29-3 at 1.) Under the facts specific to this case, Farmer's notice of claim under his policy was not given within a reasonable amount of time.

Farmer asserts that he complied with the BRB notice provision because "as soon as [he] consulted with Frank Jenkins, Esq., Jenkins understood the existence of a [*sic*] UM and PIP claim and notified Metropolitan within a few weeks." (DE 33 at 6.) Farmer's argument is flawed because it assesses reasonability from the time Jenkins "understood the existence" of claims under the insurance policy and fails to consider that Farmer knew of his injury, and the cause thereof, several months earlier.

Approximately six weeks after the accident, on November 16, 2015, Farmer had an appointment with his primary care physician. (*See* DE 29-10.) At this appointment, Farmer informed his physician about the accident and subsequent injury. (DE 29-10 at 1.) The medical record from that appointment states:

> Patient was hit by a car while walking outside Kroger about 5 weeks ago. He says that the driver ran into him but did not stop. He beat on the driver's window to get her attention, but she continued to drive. He says that he did not seek medical attention after the accident. He complains of persistent right shoulder and arm pain, which were not immediately present after the accident but began a few days thereafter. He said he started noticing significant bruising around the third or fourth day following the accident. He says that it is difficult to brush his hair due to the pain. He says that his right side is slightly weaker than his left at baseline, but he does not notice any significant deficits. He just has persistent pain.

(DE 29-10 at 1.)

In addition, the medical record further shows that Farmer was "referred to physical therapy" for his shoulder injury. (DE 29-10 at 5.) Farmer's records indicate that he attended physical therapy for his shoulder injury sometime in the months following the November 16, 2015 appointment. (DE 33-6 at 1.) Farmer then underwent an MRI on March 1, 2016, which revealed a massive rotator cuff tear. (DE 33-5.) On April 7, 2016, Farmer scheduled a surgical repair for the torn rotator cuff. (DE 33-6 at 4.) Even though Farmer received treatment for his shoulder injury, which he attributed to the October 1, 2015 accident, notice to Metropolitan was not given until April 26, 2016. (*See* DE 29-2 at 12; DE 29-3 at 1.) By that time, Farmer had known of his injury for over five months and received treatment for it. Such delay in notice is not reasonable under the circumstances.

Farmer testified that he did not report the incident to Metropolitan initially because he was injured while walking and "didn't know [his] insurance company had anything to do with it." (DE 29-2 at 10.) While that may be true, "the mere lack of knowledge of the contents of a written contract for insurance cannot serve as a basis for avoiding its provisions." *Moore v. Globe Am. Cas. Co.*, 208 S.W.3d 868, 870 (Ky. 2006). Farmer's policy clearly and unambiguously provides

that Farmer is an "eligible injured person" under the policy. Farmer was a named insured who sustained bodily injury while a pedestrian through being struck by a motor vehicle. A simple, cursory reading of the policy would have informed Farmer that he had coverage under his insurance policy for the subject-accident. Accordingly, the Court will not consider Farmer's lack of knowledge in assessing whether notice was given to Metropolitan within a reasonable amount of time.

It is undisputed that Farmer knew of his injury, and the cause thereof, at least as early as November 16, 2015. It is also undisputed that Farmer was referred to physical therapy for treatment of that injury over five months before Metropolitan was notified of a claim under the insurance policy. Where an insured knows of his injury and is treated for that injury for over five months prior to notifying his insurance company of a possible claim, absent special circumstances, such delay in notice is not reasonable. Accordingly, under the facts specific to this case, the Court finds that Farmer failed to comply with the notice requirements for BRB because notice was not given "as soon as practicable."

### C. Metropolitan has not shown that there is no genuine issue of material fact regarding whether it was substantially prejudiced by the delay in notice.

Upon initial impression, it appeared to this Court that Metropolitan had established substantial prejudice based on Farmer's significant delay in notice. To this Court, and under general case law, a nearly seven-month delay in notice to an insurance company—when the claimant knows of his injury and cause thereof—is certainly prejudicial absent special circumstances. And it is hard to fathom that a jury considering the facts of this case would see things differently. However, when applying Kentucky law to the facts of this case—as the Court is required to do—the waters become murkier.

Kentucky law regarding the substantial prejudice issue on summary judgment is unclear and somewhat contradictory. The seminal case addressing an insurer's burden of proof in establishing substantial prejudice is *Jones v. Bituminous Cas. Corp.* In *Jones*, Bituminous

16

Casualty Corporation filed a Declaration of Rights action seeking a judgment declaring it had no obligation under a liability insurance policy issued to a mining company, and its affiliates, with regard to injuries sustained by Jones in an explosion on the mining company's premises. *Jones v. Bituminous Cas. Corp.*, 821 S.W.2d 798, 799 (Ky. 1991).  The Kentucky Supreme Court examined (1) whether the insurance carrier or the claimant should have the burden of proving prejudice from a delay in notice; and (2) whether prejudice should be measured in terms of actual or probable prejudice. *Id*. at 803.  The court held that "the burden is on the insurance carrier to prove *there was in fact some substantial prejudice caused by the delay*." *Id*. (emphasis added). Regarding whether the insurance company must show actual or probable prejudice, the court states: "proof of actual prejudice is an unreasonable burden" and "the question of prejudice [is viewed] in terms of whether it is reasonably probable that the insurance carrier suffered substantial prejudice from the delay in notice." *Id*.  Then, the court states: "[i]f the evidence on this issue is in conflict, or if reasonable minds could differ as to what the evidence proves in this regard, the issue is one for the trier of fact." *Id*.  The court concludes: "[t]he issue is ripe for summary judgment only where the proof is conclusive, or there has been a failure of proof, on this subject." *Id*.

So first the *Jones* court says the insurer must "prove there was in fact some substantial prejudice caused by the delay," which indicates to this Court that the insurer must actually show some prejudice.  Then, the court states: "that actual prejudice is an unreasonable burden," and all that is required is that the insurer show that it was "reasonably probable that [it] suffered substantial prejudice from the delay in notice," which indicates to the Court that actual prejudice is not required.  Along the same lines, the *Jones* court continued: "[i]f the evidence on this issue is in conflict, or if reasonable minds could differ as to what the evidence proves in this regard, the issue is one for the trier of fact."  Finally, the court concludes that "[t]he issue is ripe for summary judgment *only where the proof is conclusive*, or there has been a failure of proof,

on this subject," which supports that the insurer must provide proof of actual prejudice. The Court is left to wonder whether, for summary judgment purposes, *Jones* requires the insurer to show proof of actual prejudice or something less.

The Court has been unable to locate a case defining a situation "where the proof is conclusive." However, according to *Black's Law Dictionary*, conclusive proof is "evidence that so preponderates as to oblige a fact-finder to come to a certain conclusion." Black's Law Dictionary (11th ed. 2019).

The substantial prejudice issue becomes even more convoluted when reviewing cases that apply the rule in *Jones*. Courts in this jurisdiction considering whether an insurer has established substantial prejudice generally consider it an issue of fact not appropriate for summary judgment. *See, e.g., Davis v. USAA Cas. Ins. Co.*, No. 2004-CA-002053-MR, 2006 WL 1509157, at *2 (Ky. Ct. App. June 2, 2006) ("We conclude that the question, under *Jones*, of whether USAA was prejudiced is an issue of fact which must be considered by the court below."); *Nautilus Ins. Co. v. Structure Builders & Riggers Mach. Moving Div., LLC*, 784 F. Supp. 2d 767, 771 (E.D. Ky. 2011). For summary judgment purposes, courts applying the *Jones* rule nearly universally require that the insurer show either (1) that the outcome would have been more favorable if it had received timely notice of the claim; or (2) that the insurer was actually and substantially harmed by the delay in notice. *See, e.g., Old Republic Ins. Co. v. Underwriters Safety & Claims, Inc.*, 306 F. App'x 250, 255 (6th Cir. 2009) ("Prejudice requires 'injury or damage.' At the very least, a showing of prejudice requires the insurer to point to some reasonable possibility that the outcome would have been different had it received notice.") (internal citations omitted); *Old Republic Ins. Co. v. Underwriters Safety & Claims, Inc.*, No. 3:05-CV-343-S, 2010 WL 3069066, at *2 (W.D. Ky. Aug. 2, 2010) (Summary judgment is not appropriate where the insurer "has failed to present evidence that the substantive outcome of the [claim] would have changed had it been timely apprised of the claim's existence, or that it

was otherwise prejudiced (that is, actually and substantially harmed) by the delay."); *Nautilus*, 784 F. Supp. 2d at 771 (Although the insurer asserted facts that supported its argument that it was prejudiced, it failed to meet its burden because "reasonable minds could differ on whether Nautilus' earlier participation would have made any difference in the outcome of the litigation below or the amount of damages ordered by the state court action."); *Employers Reinsurance Corp. v. Mut. Ins. Co.*, No. CIV.A. 3:05-CV-556-S, 2007 WL 2407272, at *4 (W.D. Ky. Aug. 20, 2007) ("[I]n determining whether insurers have been prejudiced by a delay in giving notice, the court must consider the extent to which the purpose of the provision has been defeated, or to which the insurance company has been placed in a substantially less favorable position than it would have been had timely notice been provided...."); *Ky. Nat. Ins. Co. v. Empire Fire & Marine Ins. Co.*, 919 N.E.2d 565, 585 (Ind. Ct. App. 2010) ("[O]ur review of the record does not reveal designated evidence establishing that Kentucky National suffered substantial prejudice as a result of receiving notice of the accident involving the Vehicle approximately eight months after the accident. As a result, we cannot say that the trial court erred in denying Kentucky National's motion for summary judgment on this basis."). In explaining substantial prejudice, the Sixth Circuit has relied on a treatise, which states:

> In proving prejudice as a result of a delay in providing notice, it has been stated that an insurer is not required to show precisely what outcome would have been had timely notice been given to make [a] showing of substantial prejudice. However, an insurer must show the precise manner in which its interests have suffered, meaning that an insurer must show not merely the possibility of prejudice, but, rather, that there was a substantial likelihood of avoiding or minimizing the covered loss, such as that the insurer could have caused the insured to prevail in the underlying action, or that the insurer could have settled the underlying case for a small sum or smaller sum than that for which the insured ultimately settled the claim.

> *Old Republic Ins. Co. v. Underwriters Safety & Claims, Inc.*, 306 F. App'x 250, 255 (6th Cir. 2009) (quoting Russ & Segalla, 13 Couch on Insurance, § 193:29).

The only case located by the Court granting summary judgment, in this jurisdiction, on the substantial prejudice issue was *S. Fifth Towers, LLC v. Aspen Ins. UK, Ltd.* In *S. Fifth Towers*,

South Fifth Towers, LLC ("South Fifth") owned an apartment building that was damaged by water in a rainstorm. 763 F. App'x at 403. The water damage was extensive and required demolition of an entire floor of the building. *Id*. Twelve days after the rainstorm, South Fifth notified its insurance carrier, Aspen Insurance UK, Ltd. ("Aspen"). *Id*. at 404. On the same day Aspen was notified of the loss, the restoration contractor began demolition on the damaged parts of the building. *Id*. Two days later, Aspen sent out an adjuster, employed by Tenco Services, Inc. ("Tenco") to assess the damage. *Id*. However, by that time, the demolition had been nearly completed. *Id*. South Fifth filed a claim based on the cost of the loss and subsequent demolition. *Id*. Aspen declined to cover the demolition and repair costs based on South Fifth's failure to provide timely notice of the loss. *Id*. at 403-04. South Fifth sued Aspen and Tenco for breach of contract and other claims. *Id*. at 404. The district court granted Aspen and Tenco's motion for summary judgment on the basis that they established substantial prejudice from the delay in notice, and South Fifth appealed. *Id*. at 403. The Sixth Circuit considered the facts of the case and held that "there [was] no genuine dispute that South Fifth's twelve-day delay in notice created a reasonable probability of substantial prejudice to Aspen." *Id*. at 408. The court explained:

> [t]he late notice deprived Aspen of the chance to see the water damage before demolition began. This meant that Aspen had no way of assessing how much of the demolition was necessary or of objecting to needless or too-costly demolition before it happened. Had Aspen's adjusters been present when the demolition contractor first arrived at Kentucky Towers, they could have watched and interjected as the contractor took moisture readings and mapped out which portions of the second floor to tear out. According to Richard Michelson, South Fifth's public adjuster, "[i]t's certainly helpful if the [insurance company's] adjuster is there" for this process. Admittedly, Aspen's adjusters and engineers were able to take their own moisture readings once they arrived, and they could review the demolition contractor's invoices. They could also inspect waterlogged rubble in dumpsters. But no matter how much they learned from these steps, the demolition was already done, and Aspen had no chance to inspect the damage, view pre-demolition moisture readings (which the contractor did not retain), or ask the contractor to do anything different in such extensive—and expensive—demolition.

> Even if all of the demolition was appropriate, the late notice made it impossible for Aspen to consult and coordinate with the demolition contractor and South Fifth. Michelson, the public adjuster, explained that it "would be ... normal protocol" for him to keep in contact

with Aspen's adjusters. "[A]bsolutely you want the insurance adjuster to see the loss," in order "to walk and scope damages and discuss action plans and get on the same page." With this kind of coordination, "the claim tends to go smoother." Scott Tarpley, who led the demolition contractor's team, explained that "[w]hen adjusters are available early on," they can discuss which tests, tools, and techniques to use. For this reason, Tarpley was "slightly appalled that [Aspen] did not have qualified people there earlier on."

*Id.* (internal citations omitted).

The court concluded by stating that South Fifth's breach of the notice provisions in its policy "undisputedly caused Aspen substantial prejudice … Aspen and Tenco are entitled to summary judgment on this basis alone." *Id.* at 410.

Thus, the only case in this jurisdiction concluding that an insurer was substantially prejudiced on summary judgment is a case where the insurer was actually and substantially harmed by the delay. The delay in notice completely deprived Aspen of the opportunity to inspect the damage pre-demolition and participate in the demolition process—opportunities it conclusively would have had upon receiving timely notice.

Based on the foregoing review of *Jones* and its progeny, the Court finds that proof of substantial prejudice is "conclusive," and thus appropriate for summary judgment, when an insurer shows either (1) that the outcome would have been more favorable if it had received timely notice of the claim; or (2) that the insurer was actually and substantially harmed by the delay in notice. However, in this Court's opinion, it makes more sense to presume prejudice where there is an unreasonable delay in notifying the insurer of a covered loss. Then, the insured could rebut that presumption by producing evidence supporting that the insurer was not prejudiced, and the issue would become one for the trier of fact. And a minority of other jurisdictions agree that presuming prejudice is a better approach when the insured does not reasonably provide timely notice. *See, e.g., Miller v. Dilts*, 463 N.E.2d 257, 265 (Ind. 1984); *Simpson v. U.S. Fid. & Guar. Co.*, 562 N.W.2d 627, 632 (Iowa 1997); *Champion Spark Plug Co. v. Fid. & Cas. Co. of New York*, 687 N.E.2d 785, 788 (Ohio App. 1996); *Alcazar v. Hayes*, 982

S.W.2d 845, 856 (Tenn. 1998). Nevertheless, this Court is bound to apply Kentucky law to the facts of this case, despite the bewilderment that is *Jones*.

Turning to the facts of the present case, Metropolitan alleges that it "has been completely unable to investigate [Farmer's] claim" because of his failure to provide timely notice of claims under the insurance policy. (DE 29-1 at 9.) Metropolitan states "[h]ad Farmer reported the incident to the police, it is likely they would have attempted to locate witnesses, speak with Kroger employees and secure any relevant video." (DE 29-1 at 9-10.) Metropolitan asserts that it

> might have discovered many facts including but not limited to whether Farmer was truly struck, where he was struck, a video image of the driver or her car that could have been shown to employees, an image of the driver's license plates, images of employees in the parking lot who might have observed the accident or images of witnesses who might have been identified who similarly could have been questioned.

(DE 29-1 at 10.)

Metropolitan then argues that if Farmer had "reported the incident to Kroger, it is clear that a thorough investigation would have occurred…[and] Kroger would have gathered information regarding how the accident happened as well as all information from anyone involved, including witnesses." (DE 29-1 at 10.) Kroger's Customer Incident Guidelines—which reflect the procedures that should take place when an incident is reported—require that incidents be reported to Kroger's claim management service for investigation. (*See* DE 29-7 at 3-21.) In such situations, Kroger would have preserved any relevant video footage and possibly taken photographs. (DE 29-7 at 3.) Additionally, the store's management would have completed an Incident Report containing pertinent information regarding witnesses and injuries, Farmer would have been asked to complete a Customer Statement, and any identified witnesses would have been asked to complete a witness statement. (DE 29-7 at 3-7.) Following Farmer's claims under the policy, Metropolitan subpoenaed Kroger's records and confirmed that there was no video footage or photos preserved from the incident. (DE 29-1 at 10.) Kroger informed

Metropolitan that video footage is automatically overwritten approximately every thirty days. (DE 29-7 at 2.)

Finally, Metropolitan appears to argue that if Farmer had complied with the notice requirements, Metropolitan could have discovered how the accident occurred and to what extent Farmer's shoulder was involved in the accident. (DE 29-1 at 11.) Farmer testified that the vehicle did not come into contact with his shoulder, but that he pulled himself up on the hood to avoid being run over. (DE 29-2 at 8.) Metropolitan contends that how the accident occurred is relevant because Farmer's medical records show that he had shoulder pain several months before the accident. (DE 29-1 at 11.) Farmer also testified that he was treated for a shoulder injury a few years before the accident. (DE 29-2 at 8.)

Metropolitan concludes: "[a]ll of these factors raise legitimate questions about whether and how the incident occurred and whether and how Farmer's claimed injuries occurred. By failing to report the incident until all avenues of investigations became impossible, Farmer left Metropolitan with no ability to investigate his claim." (DE 29-1 at 11-12.)

Farmer asserts that Metropolitan has failed to meet its burden in showing substantial prejudice because it did not show that the outcome would have been different if it had received notice under the policy. (DE 33 at 8.) Farmer states that "there was no reason to contact the police at the scene because Farmer did not realize he had been injured." (DE 33 at 8.) Farmer alleges that even if he did contact the police the following day, within the 24-hour period, police investigation would have been unlikely and "any investigation would have likely been unsuccessful in identifying the driver." (DE 33 at 8.) Regarding Metropolitan's argument concerning the possibility of video footage, Farmer responds that Metropolitan has provided absolutely no evidence that Kroger's cameras would have caught the accident or that they were of such quality to clearly show license plate numbers. (DE 33 at 8.) Farmer concludes by stating: "Metropolitan has failed to show the absence of a material fact concerning its alleged prejudice.

There is no reliable evidence that notification to the policy or to Metropolitan within 24 hours and 30 days would have yielded the identity of the driver." (DE 33 at 9.)

Metropolitan replied to Farmer's arguments, asserting that the following facts are undisputed and show that there is no genuine issue of material fact regarding whether it was prejudiced:

> [Farmer] does not dispute the fact that he never reported the accident to Metropolitan but had an attorney do so seven (7) months after the accident. [Farmer] does not dispute that he failed to obtain any identifying information from the woman he claims hit him, even though he admits he spoke to her for several minutes. [Farmer] does not dispute that he obtained no identifying information from the two witnesses he has testified approached him after the accident. [Farmer] does not dispute that he did not report the incident to the police. [Farmer] does not dispute that he did not report the incident to anyone at Kroger, even though he admits he continued to walk past the store every day on his lunch time walk. [Farmer] does not dispute that Kroger had in place a formal procedure by which the incident could have been investigated had he reported it.

(DE 36 at 6.)

In this Court's opinion, Farmer deprived Metropolitan of any ability to effectively investigate the alleged incident by failing to report the incident to anyone for nearly seven months. However, under Kentucky law, that does not appear to be enough to establish substantial prejudice for summary judgment purposes. Instead, Metropolitan would need to show, for example, that it was deprived of any ability to investigate the alleged incident and that it would have definitively had the opportunity to investigate if timely notice was provided.

Considering the evidence, facts, and inferences thereof in the light most favorable to Farmer, the Court finds that Metropolitan has not shown that there is no genuine issue of material fact concerning whether it was substantially prejudiced. As Metropolitan stated, "[t]he issue is whether [Farmer] complied with his obligation to *make a timely reporting to Metropolitan* consistent with the terms of his policy and whether his failure to do so *substantially prejudiced Metropolitan*." (DE 36 at 6 (emphasis added).) This issue, under Kentucky law, is not appropriate for summary judgment because there has not been a failure of proof on the subject altogether, and Metropolitan has not otherwise provided "conclusive" proof of substantial

prejudice—Metropolitan has not shown that the outcome would have been more favorable if it had received timely notice of the claim or that it was actually and substantially harmed by the delay in notice.

The fact that Farmer did not obtain identifying information from the alleged at-fault driver and witnesses on the scene is not of consequence considering that Farmer did not know of his injuries immediately post-accident. Although a prudent individual would do so, nothing in Farmer's policy required him to collect evidence at the scene of the accident. The policy generally provided that "notification should include as many details as possible, including names and addresses of drivers, injured persons, and witnesses, and the time, place, and circumstances of the accident or loss." (DE 29-6 at 22-23.) But Farmer does not have, and never did have, the names and addresses of the alleged at-fault driver or any witnesses. In addition, Kentucky's law addressing an individual's duties post-accident does not otherwise require Farmer to collect such evidence at the scene of an accident. *See* Ky. Rev. Stat. Ann. § 189.580.

Even if the incident had been reported to the police post-accident, it is questionable whether their investigation would have produced the identification of the alleged at-fault driver or any potential witnesses. It is worth noting that the alleged at-fault driver did not commit a crime under Kentucky law. KRS § 189.580 describes duties required by an individual post-accident. It states:

> The operator of any vehicle, whose vehicle … which is involved in an accident resulting in injury to … any person … shall immediately stop and ascertain the extent of the injury or damage and render reasonable assistance. The operator or person having or assuming authority of the operator, or ownership of the vehicle, shall give the occupant of the vehicle, or person struck, *if requested*, the registration number of the vehicle, if any, and also the names and addresses of the owner, the occupants, and operator.

> Ky. Rev. Stat. Ann. § 189.580(1)(a) (emphasis added).

Here, the alleged at-fault driver stopped and spoke with Farmer post-accident. (DE 29-2 at 5.) She did not leave the scene until Farmer had assured her that he was not injured. (DE 29-2 at 6.) Additionally, Farmer did not request any information from the alleged at-fault driver.

25

(*See* DE 29-2 at 6.) Accordingly, she did not commit a crime under Kentucky law. *See* Ky. Rev. Stat. Ann. § 189.580(1)(a). The Court only mentions this to point out that the breadth of a police investigation, if any, would have likely been limited because the police would not have been investigating the occurrence of a crime. The Court recognizes that if police were called to the scene at the time of the accident, they would have prepared a full report. However, Farmer did not know he was injured at the time and his policy does not require that police be called to the scene of an accident.

The Court also considers that Farmer did not possess any specific identification information regarding the alleged at-fault driver or witnesses. Although Farmer could have provided a visual description of those individuals to the police, there is nothing to indicate that the police would have been successful in locating them or that they would have provided Metropolitan with additional information helpful to its position. It is also possible that police would have attempted to secure video footage of the incident from Kroger. But again, there is nothing to indicate that the police would have done so before the video footage was overwritten or that the video footage would have been of a sufficient quality to obtain any identification of the alleged at-fault driver or witnesses. In addition, Metropolitan has provided the Court with no evidence that Kroger's cameras capture the parking lot. Even assuming they do, there is no evidence to indicate that the cameras would have captured the sidewalk outside of Kroger's parking lot— where Farmer was struck. Accordingly, whether any police investigation would have been fruitful is speculative.

Additionally, much of Metropolitan's argument focuses on what Kroger's investigation would have yielded. But Farmer had no duty under his insurance policy to report the incident to Kroger, or any other business which might have been able to investigate. And even if Farmer had reported the incident to Kroger, there is no evidence that Kroger's investigation would have yielded any helpful information. Farmer testified that he did not think he was hurt immediately

following the accident.  (DE 29-2 at 6.)  He further stated that the night of the accident his "arm started hurting some….and the next morning, [his shoulder] was really sore." (DE 29-2 at 7.) Even if Farmer had gone back to Kroger the next day to report the incident, at that time there were no known witnesses and Farmer did not know the identity or license plate number of the alleged at-fault driver.  Additionally, as stated above, Metropolitan has not provided the Court with any evidence that Kroger's cameras would have captured the incident or that they were of sufficient quality to identify the driver or witnesses.

Finally, there is nothing to indicate that if Farmer had complied with the notice requirements, Metropolitan would have any other information regarding how Farmer was hit and to what extent he pulled himself up on to the hood of the car.

There is no evidence to indicate that if Metropolitan had performed its investigation sooner, it would have any more information regarding Farmer's accident than it has now. Even though the evidence supports that compliance with the notice requirements could have provided Metropolitan with more opportunity to investigate the facts of Farmer's accident, Metropolitan has provided the Court with no evidence conclusively showing that timely notice would have provided it with any additional, relevant information or produced a more favorable outcome. Metropolitan is correct in asserting that it bears the burden to show that it was reasonably probable that it suffered substantial prejudice, which does not require actual prejudice. However, under Kentucky Law, for summary judgment purposes, proof of substantial prejudice must be conclusive or there must be a failure of proof on the subject altogether.  *Jones*, 821 S.W.2d at 803.  Reasonable minds could differ as to the significance of the evidence provided by Metropolitan.  And the Court must consider the evidence, all facts, and any inferences that may permissibly be drawn from those facts in the light most favorable to Farmer.  *See Combs*, 2012 WL 3962383 at *2 (citing *Matsushita*, 475 U.S. at 587).  Accordingly, there are genuine issues of fact that preclude summary judgment, including—but not limited to—whether police would

have assisted in locating the alleged at-fault driver or witnesses; whether police would have tried to secure video from Kroger before the video was overwritten; whether Kroger's cameras capture the sidewalk outside its parking lot; whether Kroger's cameras were of a sufficient quality to capture the incident or identify individuals involved; whether any video footage would have been helpful to Metropolitan minimizing or avoiding its liability; and whether Metropolitan would have contacted Kroger to secure video footage before it was overwritten. Metropolitan has not provided the Court with any evidence showing that the outcome would have been more favorable if it had received timely notice or that it was actually and substantially harmed by the delay. *See Old Republic Ins. Co.*, 2010 WL 3069066 at *2. The Court finds that Metropolitan has not conclusively shown that it was substantially prejudiced or that there has been a failure of proof on the subject altogether. Accordingly, the substantial prejudice issue is reserved for the trier of fact. *See Jones*, 821 S.W.2d at 803.

**D. Farmer's Motion for Additional Time to Take Discovery.**

Farmer has also filed a Motion for Additional Time to Take Discovery under Fed. R. Civ. P. 56(d). (DE 34.) Fed. R. Civ. P. 56(d) states: "if a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."

Farmer's motion requests an extension of the discovery deadline so that he can depose one of Metropolitan's claims investigators, Sunil Nichani, in order to support that Metropolitan was not substantially prejudiced. (DE 34-1 at 3.) Because the Court determined above that Metropolitan has not shown conclusively that it was substantially prejudiced or that there was a failure of proof on the subject, the Court denies Farmer's request as moot.

However, the Court recognizes deposing Metropolitan's claims investigator could be relevant to issues at trial. Accordingly, the Court will consider any forthcoming motion requesting a modification of the scheduling order for the purpose of deposing Nichani.

## III. CONCLUSION

Based on the foregoing, the Court **HEREBY ORDERS** as follows:

(1) Metropolitan's Motion for Summary Judgment (DE 29) is **DENIED**.

(2) Farmer's Motion Under Fed. R. Civ. P. 56(d) for Additional Time to Take Discovery (DE 34) is **DENIED AS MOOT**.

Dated July 29, 2019

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY